# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| In re: ) | | |
| CHICAGO MANAGEMENT ) | | |
| CONSULTING GROUP, INC. ) | Case Nos. 15 C 8917 & 15 C 8921 | |
| ) | | |
| Debtor. ) | | |
| _____ ) | Judge Jorge L. Alonso | |
| ) | | |
| DEBRA COMESS and TECHNICALLY ) | | |
| DRIVEN INC., ) | | |
| ) | | |
| & ) | | |
| ) | | |
| JULIA HATHAWAY and STUDIO OM, ) | | |
| LLC, ) | | |
| ) | | |
| Defendants-Appellants, ) | | |
| ) | | |
| v. ) | | |
| ) | | |
| HORACE FOX, as Chapter 7 Trustee for ) | | |
| the Estate of CHICAGO MANAGEMENT ) | | |
| CONSULTING GROUP, INC., ) | | |
| ) | | |
| Plaintiff-Appellee & ) | | |
| Cross-Appellant. ) | | |

## MEMORANDUM OPINION AND ORDER

Before the Court are the consolidated appeals of Julia Hathaway (Case No. 15 C 8917) and Debra Comess (Case No. 15 C 8921) and the cross-appeal of Chicago Management Consulting Group, Inc., ("CMCG") from the bankruptcy court's September 3, 2015 amended memorandum of decision on entry of final judgment and motion for sanctions. (Bankr. Case No. 14-00294 Dkt. 235). CMCG has also filed motions to dismiss appellants' appeals [69][1] and

---
[1] This motion was filed in Case No. 15 C 8921.

[72].² For the reasons set forth below, CMCG's motions to dismiss are denied, and the Court affirms the rulings of the bankruptcy court.

## BACKGROUND

These appeals stem from CMCG's voluntary Chapter 7 bankruptcy case. (Bankr. Am. Mem. at 2.) CMCG provided consulting services to BP America. (*Id*.) Hathaway and Comess, the defendants, were personal friends of CMCG's sole owner, Frank Novak. (*Id*.) In 1999, Novak retained Hathaway and Comess to perform work on behalf of CMCG. (*Id*. at 3.) Novak died by suicide in February 2012, and pursuant to his will and trust, Comess was entitled to all of Novak's property, including CMCG. (*Id*.) Comess retained counsel and filed the bankruptcy proceeding, in which CMCG's trustee sought: (1) to avoid alleged fraudulent transfers of CMCG's assets that Novak made to Comess and Hathaway; and (2) relief from evidence spoliation and delayed discovery responses. (*Id*. at 2-3.) On September 3, 2015, after trial, the bankruptcy court issued an amended memorandum and judgment in which it found that the challenged transfers to Hathaway, the challenged retainer payments to Comess, three payments on Novak's life insurance policy, and payment to the probate attorney handling Novak's estate demonstrated an actual intent to deceive creditors by clear and convincing evidence under § 548(a)(1)(B) of the Bankruptcy Code and § 5(a)(2) of the Illinois Uniform Fraudulent Transfer Act ("IUFTA"). (*Id*. at 10-11.) The court also found that Comess breached her duty to preserve evidence on Novak's laptop and caused the trustee to incur damages when he retained a computer expert to determine what had been deleted from the computer. (*Id*. at 12.) Finally, the court held that the trustee was entitled to attorney's fees and expenses he incurred pursuing

---
² This motion was filed in Case No. 15 C 8917.

delayed discovery from Comess and Hathaway. (*Id*. at 15.) Ultimately, the court awarded the trustee $50,276.20 against Comess[3] and $56,588.06 against Hathaway.[4] These appeals followed.

## STANDARDS

The Court sits as an appellate court for bankruptcy court proceedings. *See* 28 U.S.C. § 158(a)(1). We review the bankruptcy court's findings of fact for clear error and its legal conclusions de novo. *See In re Miss. Valley Livestock, Inc.*, 745 F.3d 299, 302 (7th Cir. 2014). "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re Herman*, 737 F.3d 449, 452 (7th Cir. 2013) (citation omitted). If there are two permissible views of the facts, a court's choice between them cannot be clearly erroneous. *See First Weber Grp., Inc., v. Horsfall*, 738 F.3d 767, 776 (7th Cir. 2013).

"A bankruptcy court's decision to impose sanctions is reviewed for an abuse of discretion." *In re Kuttner,* 15 C 980, 2015 WL 3578966, at *3 (N.D. Ill. June 8, 2015) (citing *In re Hancock,* 192 F.3d 1083, 1085 (7th Cir. 1999)). "Unless the sanctioning court has acted contrary to the law or reached an unreasonable result," the decision will be affirmed. *In re Rimsat, Ltd.,* 212 F.3d 1039, 1046 (7th Cir. 2000).

---

[3] The court awarded the trustee $24,450 for the retainer payments CMCG made to Comess (Bankr. Am. Mem. at 15); $12,904.50 for the computer expert (Bankr. Case No. 14-00295 Dkt. 261); and $12,921.70 in attorney's fees and costs as discovery sanctions (Bankr. Case No. 14-00295 Dkt. 260).

[4] The court awarded the trustee $45,400.81 for the fraudulent transfers CMCG made to Hathaway (Bankr. Case No. 14-00294 Dkt. 249) and $11,187.25 in attorney's fees and costs as discovery sanctions (Bankr. Case No. 14-00294 Dkt. 248).

## DISCUSSION

### CMCG's Motions to Dismiss

After each side filed their opening briefs, CMCG filed a motion to dismiss appellants' brief. In support thereof, CMCG argues that appellants violated the Federal Rules of Bankruptcy Procedure by not compiling a complete or sufficient record for the Court to make a meaningful review. (Mot. to Dismiss at 2.) Specifically, CMCG contends that appellants have failed to submit relevant trial court transcripts and exhibits and that their brief lacks a statement of facts, standard of review, jurisdictional statement, and statement of the case, as required by the bankruptcy rules. (*Id*. at 2-7.) CMCG asks the Court to dismiss appellants' appeals and award it attorneys' fees and costs as sanctions. (*Id*. at 8-9.) Rather than respond to CMCG's arguments, appellants argue that the trustee did not object to appellants' designation of record on appeal or procedural defects in their brief until he filed his motion, and then point out (as if the Court was unaware) that the trustee has requested and received several extensions to properly file his record on appeal, opening brief, and response. (Resp. at 2-3.) Without citing any authority, appellants assert that the trustee's objections are untimely and should be disregarded. (*Id*. at 3.)

At the outset, the Court notes that both sides sought extensions and still failed to provide the Court with a complete, consolidated record with which to conduct its review. A review of the dockets in the two cases confirms that both sides have submitted a statement of issues to be presented and designated items to be included in the record of appeal.[5] Despite having to scour the dockets, the Court has located many of the designated documents and exhibits[6] and

---

[5] Comess and Hathaway's statements of issues and list of designations can be found in Case No. 15 C 8917 [72-1]. The trustee's statement of issues and list of designations can be found in Case No. 15 C 8917 [25].

[6] Comess's designations are in Case No. 15 C 8921 [7-2], [79]-[81] and in Case No. 15 C 8917 [7]. Hathaway's designations are in Case No. 15 C 8917 [6-2], [7], [84], [85] and in Case No. 15 C 8921 [81]

4

concludes it can conduct a review of the issues the parties have presented. The Court acknowledges that the appellants' brief fails to include a statement of facts, standard of review, and jurisdictional statement, but does not conclude that such negligence compels dismissal. *See In re Stotler and Co.,* 166 B.R. 114, 117 (N.D. Ill. 1994) (court considered appellant's appeal even though he "failed to brief [the] appeal according to the bankruptcy rules" and found that deficiencies in appellant's briefing led the court to affirm the bankruptcy court's ruling). Accordingly, the trustee's motions to dismiss are denied.

**Hathaway and Comess's Appeal**

In their statement of issues presented, Hathaway and Comess challenge the following bankruptcy court rulings: 1) whether CMCG was insolvent at the time of the transfers at issue; 2) whether CMCG received value for those transfers; 3) whether CMCG had creditors within the meaning of the statute during the entire four-year period at issue; 4) whether sanctions were appropriate; and 5) whether finding Comess liable for spoliation was appropriate. (Appellants' Br. at 1-2.) In his response, the trustee contends that none of bankruptcy court's findings were clearly erroneous. (Trustee's Resp. at 3-4.) In their reply, the appellants clarify their position that the bankruptcy court ignored substantial evidence of solvency, improperly shifted the burden regarding transfers for value, disregarded the standards for spoliation of evidence, and imposed sanctions where there was no prejudice. (Appellants' Reply at 1.)

---

and [82]. The trustee's designations are in Case No. 15 C 8917 [7], [39], [40] and in Case No. 15 C 8921 [17] and [40]. The Court notes that the trustee filed two motions in 15 C 8917 for leave to file certain exhibits under seal [54] and [64]. Those motions were granted [60] and [66]. As best as the Court can tell, the trustee never filed those exhibits on the record even though he did file a letter [71] he sent to the bankruptcy court asking that court to place exhibits on the dockets of the district court cases. The Court received two flash drives from the trustee that contain certain exhibits. To the extent those exhibits are not filed on the dockets in Case Nos. 15 C 8917 and 15 C 8921, the Court has not considered them.

**Solvency**

The appellants contend that the bankruptcy court erred when it found CMCG insolvent during the relevant time frame (2008-2012). They argue that the accountant expert who prepared the insolvency report knew it would benefit the trustee to make a finding of insolvency and assert that she only reviewed CMCG's business records of liabilities, not assets. (Appellants' Br. at 2-3.) They contend that one of the trustee's exhibits, unlike the QuickBooks entries on which the accountant relied, contradicts the expert's report and reflects that CMCG was solvent throughout the relevant time frame. (*Id*. at 4-6.) Citing very little and out-of-Circuit) authority, appellants also argue that the expert report does not tie CMCG's financial condition to the dates of the transfers as required. (*Id*. at 6.) Ultimately, the appellants contend that the accountant's report did not provide an accurate depiction of CMCG's financial condition throughout the four-year time period. (*Id*. at 7.) The trustee counters that it was not clearly erroneous for the bankruptcy court to reply on the trustee's expert witness's testimony that CMCG was insolvent at all relevant times because hers was the only expert testimony presented on the issue. (Trustee's Resp. at 8.) The trustee asserts that it is improper for the Court to consider appellants' counsel's opinion about fact issues related to insolvency. (*Id*. at 9.) The trustee also argues that the appellants present no legal authority prohibiting the court from relying on the expert's report or any evidence that CMCG was operating at a net profit on any given date. (*Id*. at 10.)

"Insolvency is a question of fact, and the bankruptcy court has broad discretion to determine insolvency." *Grochocinski v. Schlossberg,* 402 B.R. 825, 836 (N.D. Ill. 2009). According to the IUFTA and the Bankruptcy Code, "a debtor is insolvent if the sum of [its] debts is greater than all of [its] assets at a fair valuation." *In re CF Graphics, Inc.,* No. 06 B 00459, 2009 WL 2215089, at *10 (N.D. Ill. July 21, 2009) (quoting 740 ILCS 160/3(a) and citing 11

U.S.C § 101(32)). The bankruptcy court relied on the QuickBooks data maintained by Novak and the accountant expert to determine CMCG's financial condition during the relevant time period. (Bankr. Am. Mem. at 3.) Further, the court overruled defendants' challenges to the expert's determination that CMCG's assets were less than its outstanding liabilities during the relevant period. (*Id*. at 3-4.) This Court notes that the appellants have copied and pasted the post-trial briefs they submitted in the bankruptcy court proceeding into the briefs they submitted in this proceeding. *Compare* Post-Trial Arg. of Julia Hathaway Case No. 15 C 8917 [6-2] at 48-51; 73-77 and Post-Trial Arg. of Debra Comess Case No. 15 C 8921 [7-2] at 41-44; 86-90 *with* Appellants' Br. at 2-7. To their regurgitated arguments, the appellants add a few sentences asserting that the bankruptcy court missed the point and that solvency should not be determined by comparing CMCG's total assets to its total liabilities but rather whether there was any cash or accounts receivable not accounted for in the accountant's analysis of CMCG's QuickBooks data. (Appellants' Br. at 7.) The bankruptcy court dismissed a similar objection as misguided, reasoning that the chart on which appellants urge this Court to rely reflects only accounts receivable at monthly intervals and does not compare CMCG's total asset value compared to its total liabilities. (Bankr. Am. Mem. at 3.) The court also rejected appellants' argument that the expert's analysis wrongly compared CMCG's assets and liabilities at six-month intervals, rather than at the time of any particular asset transfer, reasoning that CMCG's operations were consistent throughout the relevant period and that the six-month sampling likely presented the balance of assets and liabilities at any given time during that period. (*Id*. at 4.)

The Court finds baseless appellants' arguments that the bankruptcy court clearly erred when it found CMCG insolvent during the relevant time frame. According to Illinois law and the Bankruptcy Code, a debtor is insolvent when its liabilities exceed its assets. The accountant

expert's chart shows that CMCG's liabilities exceeded its assets during the relevant four-year time period, and it cannot have been erroneous for the bankruptcy court to rely on that chart instead of an Excel spreadsheet of unknown origin that shows only the monthly deposits CMCG received. Appellants' attempt to contradict the expert's conclusion by plugging in larger amounts for accounts receivable and total assets[7] without explaining why either number is accurate or, in the case of total assets, where the number came from, does not persuade this Court that the bankruptcy court erred when it relied on the accountant expert's analysis. *See In re Longview Aluminum, LLC,* No. 03 B 12184, 2005 WL 3021173, at *6 (N.D. Ill. July 14, 2005) ("It is generally accepted that whenever possible, a determination of insolvency should be based on seasonable appraisals or expert testimony."). Accordingly, the Court affirms the bankruptcy court's finding that CMCG was insolvent during the relevant time frame.

**Transfers**

Next, appellants contend that the bankruptcy court erred when it held that CMCG did not receive value for transfers it made to Comess and Hathaway. Comess states that she worked for CMCG on the American Society of Corporate Security database, attended industry group meetings, and consulted with CMCG from 2008 to 2012. (Appellants' Br. at 8.) She argues that her invoices reflect payment for these services and reimbursement for expenses and that the trustee did not produce any contradictory evidence. (*Id*. at 8-9.) Hathaway asserts that during the relevant time period, she consulted for CMCG on IT project management, workshop training, documentation, process flow, and general business and that her invoices reflect payment for

---

[7] Despite its thorough search of the dockets in the district court and bankruptcy court proceedings, the Court was unable to locate a copy of the accountant expert's report and so bases its analysis on the reproduction of the accountant's and CMCG's monthly receivables charts on pages 4 and 5 of appellants' brief. The Court notes that in adversary proceeding 14-00295 in the bankruptcy court, defendants filed a motion in limine to bar the accountant expert's report [95], but the report itself is not included with that motion.

8

those services. (*Id*. at 9-10.) Hathaway also asserts that she testified that she believed any gifts she received came from Novak personally, not CMCG. (*Id*. at 11.) The trustee contends that CMCG's records reflect that it sent appellants checks even though it received no invoices from appellants. (Trustee's Resp. at 12.) Further, the trustee states that CMCG did not consider the appellants bona fide contractors because they were never issued 1099 forms nor were they listed with CMCG's 1099 subcontractors. (*Id*. at 13.) The trustee asserts that any evidence of invoices provided by appellants was created after this action was filed. (*Id*. at 13-15.)

In ruling that payments CMCG made to Hathaway and Comess were not for work done for reasonably equivalent value, the bankruptcy court relied on the following evidence: (1) Hathaway and Novak's close friendship; (2) Hathaway's acknowledgement that Novak paid for her yoga studio's equipment; (3) email correspondence indicating that Hathaway had a practice of asking Novak to pay for her personal expenses; (4) only Hathaway's testimony and the bills she prepared demonstrate any work done for CMCG; (5) the bills Hathaway testified she submitted were irregular in form; (6) Hathaway's invoices did not correspond to payments CMCG made to her; (7) CMCG's payments to Hathaway increased significantly in 2008 when she began working full-time in her yoga studio; (8) the close personal relationship between Comess and Novak; and (9) the lack of evidence of any work done for monthly retainers, particularly in light of the additional invoices Comess submitted for updating CMCG's database and out-of-pocket expenses.[8] (Bankr. Am. Mem. at 4-8.)

"In determining whether a debtor received 'reasonably equivalent value,' courts consider all the circumstances of the transfer including the 'fair market value of what was transferred and received, whether the transaction took place at arm's length, and the good faith of the

---

[8] The bankruptcy court also acknowledged that some of the payments Comess received from CMCG were reasonable consideration for work she performed for the company and did not consider those transfers fraudulent. (Bankr. Am. Mem. at 7-8.)

9

transferee.'" *In re Wierzbicki,* 830 F.3d 683, 687 (7th Cir. 2016) (quoting *In re Smith,* 811 F.3d 228, 240) (7th Cir. 2016)). The Court again notes that appellants have resubmitted their largely unaltered post-trial briefs from the bankruptcy court proceedings as their briefs in this proceeding without indicating why the bankruptcy court's reliance on the extensive evidence they cited was clear error. The only new argument appellants raise is that the invoices Comess and Hathaway submitted to Novak were in compliance with CMCG's requirements. While that may be, that unsupported statement is not enough to persuade this Court that CMCG received equivalent value in services for the money Novak paid Comess and Hathaway in light of the extensive contradictory evidence upon which the bankruptcy court relied. *See In re Ball,* 611 F. App'x 356 (7th Cir. 2015) (affirming the district court's decision to affirm the bankruptcy court when appellant "submitted no evidence to disturb the bankruptcy judge['s] determination[]"). Accordingly, the Court affirms the finding that the majority of Novak's payments to Comess and Hathaway were not transfers for equivalent value.

**Creditors**

Appellants next argue that the bankruptcy court erred when it found that CMCG's credit-card and tax obligations amounted to its having creditors. (Appellants' Br. at 16.) They assert that the tax obligations were nominal and that there was no evidence that the credit-card debt was due or that CMCG was unable to pay it. (*Id.*) The trustee argues that based on the evidence before the bankruptcy court, it was plausible for the court to conclude that the IRS was an unsecured creditor during the relevant time frame and that CMCG was indebted on credit cards. (Trustee's Resp. at 16.) The trustee also contends that appellants cite no evidence or legal authority to support their arguments. (*Id.*)

In determining that CMCG had unpaid taxes and outstanding credit-card charges during the relevant time frame, the bankruptcy court relied on evidence submitted by plaintiff, including notice from the IRS of unpaid taxes and the expert accountant's report. (Bankr. Am. Mem. at 9.) Appellants cite no authority for the premise that nominal tax obligations do not render the IRS a creditor or even what constitutes a nominal tax obligation. Further, appellants do not submit any evidence supporting their assertion that CMCG had the capital to pay the outstanding taxes or credit-card debts or that they were not due.[9] Accordingly, the Court does not find that the bankruptcy court erred when it held that CMCG had unsecured creditors at the time of the challenged transfers. *See Ball,* 611 F. App'x at 356.

**Sanctions**

Appellants next challenge the fees the bankruptcy court imposed against them as sanctions. Without citing any authority, appellants contend that the attorney time connected with the motions to quash and motions to compel production of emails was wasted and should not be recoverable. (Appellants' Br. at 19.) They further assert that the trustee's counsel should not be reimbursed for review of email because nothing useful was produced. (*Id*. at 20-21.) In addition to arguing that the sanctions for *in camera* review of emails should be stricken, appellants also argue that the trustee's counsel should be sanctioned for falsely accusing Comess and Hathaway of withholding emails. (*Id*. at 21.) Finally, appellants argue that the time awarded for issuing subpoenas for non-parties should be stricken because Hathaway did not cause any of the related delays. (*Id*. at 21-22.) They assert that the bankruptcy court erred when it awarded sanctions for delays that were not the fault of the appellants, did not prejudice the trustee, and had no effect on

---

[9] As with the accountant expert's report, the Court was unable to locate the IRS notice sent to CMCG about outstanding taxes or credit-card statements (which apparently were part of the accountant expert's report) on which the bankruptcy court relied. As best as the Court can tell, neither party has provided that evidence or any evidence to refute the bankruptcy court's reliance on it.

11

the outcome of the case. (*Id*. at 23.) The trustee counters that the bankruptcy court did not abuse its discretion when it issued monetary sanctions against the appellants for failure to comply with two court orders. (Trustee's Resp. at 17.)

In sanctioning appellants, the bankruptcy court explicitly held that "sanctions [were] levied only to the extent that the defendants' failure to comply with court orders caused the trustee to expend additional time and resources." (Am. Bankr. Mem. at 13.) Further, the bankruptcy court did not award sanctions for appellants' alleged failure to properly answer interrogatories or failure to produce tax and other documents. (*Id*. at 14.) The court awarded the trustee attorney's fees and expenses in pursuing discovery matters related to appellants' emails that the bankruptcy court twice ordered to be turned over.[10] (*Id*. at 14-15.)

"Courts have broad discretion to select the appropriate sanction for a discovery violation in light of the unique factual circumstances of the case," *In re Kmart Corp.,* 371 B.R. 823, 840 (N.D. Ill. 2007), and "[u]nder the abuse of discretion standard, 'an appellant faces an uphill battle' in seeking to reverse a lower court's sanction order," *Grochocinski,* 402 B.R. at 842 (quoting *In re Golant,* 239 F.3d 931, 937 (7th Cir. 2001)). The bankruptcy court was clear that it awarded the trustee sanctions related to appellants' alleged violations of court orders to produce discovery. While the bankruptcy court ultimately found that the failure to produce some emails was not caused by the appellants and other unproduced emails were not relevant, it awarded the trustee fees and expenses related to the the motion practice that aided the court in reaching that conclusion. It appears the attorney's fees and expenses were incurred determining whether the appellants were responsible for a gap in production and whether the unproduced emails were

---

[10] The trustee testified that the delayed responses caused him to incur additional costs. (Bankr. Am. Mem. at 15.)

12

relevant.[11] Considering the broad discretion lower courts have in sanctioning parties, the Court does not find such an award was an abuse of discretion.

**Spoliation**

Finally, Comess contends that the bankruptcy court erred in awarding sanctions to the trustee despite ruling that he had not proved spoliation of evidence.[12] (Appellants' Br. at 15.) She argues that hiring the computer expert was a waste of time and money and could have been avoided if the trustee had asked for Novak's laptop sooner; therefore, it was improper for the bankruptcy court to order Comess to pay for the expert. (*Id*. at 16.) The trustee contends that the bankruptcy court did not abuse its discretion when it found that Comess's actions resulted in the spoliation of evidence. (Trustee's Resp. at 18.)

In entering judgment for the trustee for a reasonable amount to cover the computer expert's services, the bankruptcy court held that Comess had a duty to preserve evidence contained on Novak's laptop and that she breached that duty. (Bankr. Am. Mem. at 12.) It further held, however, that the only damages the trustee established were for the cost of retaining an expert to determine the extent of the deletions made from Novak's computer at Comess's direction.[13] (*Id*.) Comess does not contend that she did not have a duty to preserve evidence or that she did not breach that duty, but instead asserts that retaining the computer expert was

---

[11] At a status hearing on September 2, 2015, the bankruptcy court indicated it found "some of the expenses incurred by the trustee in preparing the discovery sanctions motions and arguing the discovery sanctions motions and reviewing the subsequent production . . . compensable." (Bankr. Case No. 14-00294 Dkt. 305 Tr. at 3 ll. 15-19.)

[12] Again, the bulk of appellants' brief is identical to the post-trial brief submitted to the bankruptcy court. *Compare* Comess's post-trial brief 15 C 8921 [7-2] at 47-50, 54 and Comess's sur-reply to motion for sanctions [7-2] at 70-71 *with* appellants' brief at 11-15.

[13] The bankruptcy court held that the trustee did not show that any information deleted from Novak's laptop could have led to any additional recoveries for CMCG's estate. (Bankr. Am. Mem. at 12.)

unnecessary because that process produced no relevant evidence. The Court is not persuaded. Without retaining the expert, it would have been impossible to determine what had been deleted from the laptop and whether that evidence was relevant to the bankruptcy proceeding. Given the broad discretion afforded to lower courts in imposing sanctions, the Court does not find that the bankruptcy court abused its discretion in awarding the trustee fees for the computer expert. *See Grochocinski,* 402 B.R. at 843 (affirming a bankruptcy court's award of sanctions in the form of costs for retaining a computer expert). Accordingly, the Court affirms the bankruptcy court's rulings.

### CMCG's Cross-Appeal

In its cross-appeal,[14] CMCG asserts that the bankruptcy court erred when it refused to enter Rule 37 sanctions against Hathaway for a failure to produce documents that allegedly would have allowed the trustee to present evidence about the "financial arrangement" between her and Novak. (Cross-Appellant's Br. at 3, 5.) Hathaway argues that there is no evidence to support sanctioning her. (Hathaway's Resp. at 2.)

As discussed above, in sanctioning appellants for alleged failure to produce emails, the bankruptcy court awarded the trustee only those fees and costs associated with determining whether appellants were responsible for non-production. (Bankr. Am. Mem. at 14.) When an *in camera* review revealed they were not, the court awarded only costs and fees that were required for that determination. (*Id*. at 14-15.) While the court noted that the gap in production was "suspect," it ultimately found that it was caused by the email providers' production, not the appellants' failure to disclose documents. (*Id*. at 14.) Without evidence of the alleged "financial arrangement" between Novak and Hathaway, the bankruptcy court refrained from sanctioning

---

[14] The trustee withdrew its cross-appeal against Comess in Case No. 15 C 8921 [86].

14

Hathaway beyond attorney's fees related to the motions for sanctions. While the trustee reiterates that he was prejudiced in receiving other documents late or not at all, it appears to this Court that the bankruptcy court thoroughly and repeatedly reviewed all outstanding discovery and found that it had been produced or that trustee had not been prejudiced. (*Id.* at 14; *see also* Case No. 15 C 8917 Dkt. 40, Tr. of 8/12/15 Sanctions Mot. Hr'g in Bankr. Case No. 14-00294.) Given the court's broad discretion in leveling sanctions, this Court cannot find an abuse of discretion in the bankruptcy court's reasonable conclusion. Accordingly, the Court affirms the bankruptcy court's rulings.

## CONCLUSION

For the reasons set forth above, CMCG's motions to dismiss [69] and [72] are denied. The Court affirms the decisions of the bankruptcy court.

**SO ORDERED.**            **ENTERED:** June 2, 2017

_____
**JORGE L. ALONSO**
**United States District Judge**